# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **CATHERINE J. TURNER,** | **CASE NO. 4:07CV3203** |
| **Plaintiff,** | |
| v. | **MEMORANDUM** |
| | **AND ORDER** |
| **SOCIAL SECURITY ADMINISTRATION,** | |
| Michael J. Astrue, Commissioner, | |
| **Defendants.** | |

Plaintiff, Catherine J. Turner ("Turner"), seeks review of a decision by the defendant, Michael J. Astrue, the Commissioner of the Social Security Administration ("SSA"), denying her application for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 *et seq.*[1] In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g). After carefully reviewing the record, I conclude that the SSA decision should be affirmed.

## PROCEDURAL BACKGROUND

On May 1, 1992, Turner was granted SSI benefits based on her injuries sustained in a motor vehicle accident in 1978. She continuously received benefits until 1999, when her spouse's earnings caused her to become ineligible for SSI. Turner filed the application relevant to this case for disability benefits under Title XVI on June 23, 2003, after her divorce (Tr. 184-86). Her application was denied initially and on reconsideration (Tr. 44, 46, 48-51, 54-57). On November 11, 2004, following a hearing, an administrative law

---

[1] On December 20, 2004, Turner protectively filed a subsequent application for SSI. The Appeals Council's remand order rendered the subsequent claim duplicative, and the ALJ's opinion applied to both claims.

judge (ALJ) found that Turner was not under a "disability" as defined in the Social Security Act (Tr. 14).  On August 22, 2005, the Appeals Council of the Social Security Administration remanded the case for further development (Tr. 14).  After a supplemental hearing, an ALJ issued a new decision on July 3, 2006, again finding that Turner was not under a "disability" as that term is defined in the Social Security Act (Tr. 14- 23).  Turner filed a timely Request for Review of Hearing Decision with the Appeals Council on August 14, 2006 (Tr. 10).  The decision of the ALJ stands as the final decision of the Commissioner.

Turner was born in 1961 and, on May 1, 1992, was determined by the SSA to be unable to work as the result of a severe head injury and concussion sustained during an automobile accident on August 6, 1978 (Tr. 184).  Turner completed the twelfth grade (Tr. 202).  The medical evidence shows that Turner was hospitalized from August 6, 1978, to August 30, 1978, for multiple injuries sustained in an automobile accident, including cerebral concussion, left eye contusion, multiple posterior rib fractures bilaterally with hemopneumothorax (Tr. 355).  She also sustained a "fracture left kidney," and a pelvic fracture (Tr. 355).  Her physicians noted that they found "no significant intracranial injury" (Tr. 356).  She was placed on a respirator and was hyperventilated to "control respirations and limit cerebral edema" (Tr. 356).  On August 7, 1978, her physicians stated that they were "convinced of a stable, and improving neurological status . . . " (Tr. 357).

By August 11, 1978, her physicians noted that she "gradually and progressively improved" (Tr. 356).  During her hospitalization, Turner was not cooperative with hospital personnel, "which possibly represented a pre-injury personality defect and possibly minimal brain dysfunction, not attendant with the injury." (Tr. 356).  On August 22, 1978, Dr.

2

Burlington was consulted for Turner's behavioral difficulties in the ICU, which disorders were "secondary to organic brain syndrome secondary to trauma and also secondary to situational stress of hospitalization and intensive care." (Tr. 358). On September 1, 1978, Dr. Gogela, saw Turner for a neurologic evaluation, which revealed a "grade I weakness of the left internal rectus muscle" and some size difference in her pupils, but Dr. Gogela found "no other cranial nerve deficit."  (Tr. 386).

In 1992, Dr. William R. Stone, Jr. examined Turner at the request of the Nebraska Department of Education, Disability Determinations Section  (Tr. 392-95).  Dr. Stone determined that Turner gave the clinical impression of "frontal lobe syndrome" (Tr. 394). He indicated that Turner "is having difficulties in functioning independently in the basic activities of daily living.  Likely her distractibility and difficulty in organizing herself are factors.  The extent of which she could be treated to work around these problems is unknown, and would require further studies."  (Tr. 394).

On July 29, 2003, Turner was seen by Ruilin Wang, M.D., for memory loss, headache, emotional stress disorder, depression, and left hip and left arm pain (Tr. 400). Examination revealed normal spine movement, and normal range of motion in her shoulders, elbows, and wrists (Tr. 402).  Straight leg raising was negative, and both hips, knees, and ankles had normal range of motion (Tr. 402).  Turner's motor strength was 5/5 bilaterally in her arms and legs, and her hand grip (Tr. 402).  Her reflexes were symmetrical, and she was alert and oriented (Tr. 402). Turner's insight and judgment were appropriate (Tr. 402).  Dr. Wang diagnosed memory loss, chronic headache, stress disorder, depression, and multiple joint pains of an unknown etiology (Tr. 402-03).

On August 11, 2003, Turner was evaluated by Robert Arias, Ph.D. (Tr. 404). Testing established that Turner's memory functioning was in the "low average range" (Tr. 405). Dr. Arias noted that Turner had an "adequate ability to receive, organize, analyze, remember and express information appropriately in this conversational setting" (Tr. 406). Dr. Arias stated, "there does not appear to be restriction of the patient's basic activities of daily living at this point" (Tr. 406).

Turner saw Rajesh Kumar, M.D., on April 5, 2005, for complaints of being unable to control her emotions, and occasional hip pain on the left side (Tr. 447). She had full range of motion of her hips, and straight leg raising was negative (Tr. 448).

On July 11, 2005, Turner was evaluated at intake by the Community Mental Health Center of Lancaster County (Tr. 261). Turner reported seeking services for depression, sexual urges, and trouble controlling her anger (Tr. 261). The therapist noted that Turner was oriented in all spheres, and her concentration and attention span were adequate (Tr. 263). She was not taking any prescription medication (Tr. 263). The therapist stated that "there is not enough evidence to support a diagnosis of Major Depressive Disorder" (Tr. 263). Turner was diagnosed with Depressive Disorder, not otherwise specified, and personality disorder, not otherwise specified (Tr. 263).

In a pretreatment assessment on September 9, 2005, Turner reported having difficulty controlling her anger (Tr. 453). Turner was clam, cooperative, and forthcoming, and her speech was logical, slow, and soft (Tr. 454). Turner was alert and oriented, and her insight, judgment, and impulse control were fair (Tr. 454). The social worker diagnosed depression, not otherwise specified, with a need to rule out a personality disorder, not otherwise specified (Tr. 454).

On December 12, 2005, Turner was seen by George Wolcott, M.D., for evaluation of her complaints of memory loss, anger, and head pain (Tr. 465). Dr. Wolcott noted that Turner's memory was "significantly helped by notes that were quite extensive that have been prepared by her" (Tr. 468). He diagnosed a 1978 head injury, and moderate obesity (Tr. 468). Dr. Wolcott completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form on December 16, 2005 (Tr. 470). He opined that Turner was not limited in her ability to lift, carry, stand, walk, sit, push, or pull (Tr. 470-71).

On March 3, 2006, Turner saw Dr. Arias for a disability evaluation to assess Turner's cognitive functioning (Tr. 474). Testing demonstrated that Turner's comprehension was intact (Tr. 475). She was able to receive, organize, analyze, remember, and express information appropriately (Tr. 477). Turner's mood was euthymic and her affect was full (Tr. 477). Dr. Arias noted that Turner laughed frequently, and her judgment appeared to be within normal limits (Tr. 477). Dr. Arias opined that Turner was able to understand, remember, and carry out instructions, and was capable of responding appropriately to supervision, coworkers, and work pressures in a work setting (Tr. 477). Turner was capable of maintaining basic social functioning, and performing activities of daily living, and she was able to adapt to basic changes in her environment (Tr. 477). Turner appeared relatively jovial and stable in her functioning (Tr. 477). Dr. Arias diagnosed major depressive disorder in remission, and opined that her Global Assessment of Functioning (GAF) score was 78 (Tr. 477-78). Dr. Arias completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" form on March 6, 2006 (Tr. 479). He indicated that Turner's ability to understand, remember, and carry out instructions was not affected by

5

any impairment (Tr. 479). Also, she was able to respond appropriately to supervision, coworkers, and work pressures in a work setting (Tr. 480).

Turner appeared and testified at an administrative hearing on August 10, 2004 (Tr. 487). She stated that she was in a coma for two to three weeks after her automobile accident in 1978 (Tr. 497). At the second administrative hearing held on April 26, 2006, medical expert Sanford Pomerantz, M.D., stated that the medical records did not support Turner's allegation that she was in a coma for a couple of weeks, or even for a few days (Tr. 566). A vocational expert testified that an individual with Turner's limitations would be able to perform work as a hand packer, vehicle washer, laundry worker, packager, or janitor/cleaner (Tr. 23).

After the date of the ALJ's decision, Louis Gogela, M.D., wrote a letter dated May 8, 2006, to Turner's attorney (Tr. 483). Dr. Gogela noted that he treated Turner in 1978 for the injuries that she sustained in the automobile accident (Tr. 483). He stated that he could "vaguely remember" the accident (Tr. 483). He noted that she had a cerebral concussion, and that she was combative and unresponsive to stimuli (Tr. 483). Dr. Gogela complained that Dr. Pomerantz was "manipulative and possibly dishonest," and stated that Dr. Pomerantz did not understand that a person "does not have to be 'unconscious' to suffer a closed head injury," as Turner did (Tr. 483).

**ALJ's Findings**

In her supplemental opinion on remand from the appeals council, the ALJ found Turner had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. 15.) She determined that Turner had a personality disorder and depression that more

than minimally impaired her ability to perform basic work related functions, but that she did not meet or equal the Listings in Appendix 1 to Subpart P of Regulation 4. (Tr. 15-16.)

Because Turner had no past relevant work, the ALJ performed a residual functioning capacity analysis at step 5. In doing so, the ALJ determined that Turner had no physical impairments and could perform work at all exertional levels (Tr. 17). The ALJ found that Turner could not maintain attention or concentration for extended periods, but could perform work under routine supervision and could tolerate occasional, but not detailed or constant, social interaction with supervisors and co-workers (Tr. 17).

The ALJ gave weight to Dr. Pomerantz's opinion that Turner had not been in a coma in 1978, and reconciled this with Dr. Gogela's records of Turner having a "closed head injury" (Tr. 18-19). The ALJ also reviewed the opinion of the consultative psychological examiner and medical records to determine that Turner had moderate limitations in concentration, persistence, and pace and moderate limitations in maintaining attention and concentration for extended periods (Tr. 18).

The ALJ determined under *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), that Turner was not completely credible, citing her receipt of alimony and her typed narratives in the record, and that she read, watched television, went to coffee shops, and spent as long as four hours on the computer researching "various things." (Tr. 20-21). Finally, the ALJ concluded that Turner had the residual functional capacity to perform a number of positions available in the national and regional economy and found her not to be under a disability. (Tr. 23).

7

**STANDARD OF REVIEW**

In reviewing a decision to deny disability benefits, a district court does not reweigh evidence or the credibility of witnesses or revisit issues *de novo*. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995); *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995.)  Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and, if so, to affirming that decision.  *Harris,* 45 F.3d at 1193.

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001.)  The Court must consider evidence that both detracts from, as well as supports, the Commissioner's decision.  *Id.*; *Morse v. Shalala,* 16 F.3d 865, 870 (8th Cir. 1994.)  As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000); *Harris,* 45 F.3d at 1193.

**ANALYSIS**

**"Disability" Defined**

An individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A.)  The physical or mental impairment must be of such severity that the claimant is "not only unable to do his previous work but cannot,

8

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). If the claimant argues that he or she has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B).

**Sequential Evaluation and Residual Functional Capacity**

In determining disability, the Act follows a sequential evaluation process. *See* 20 C.F.R. § 416.920. In engaging in the five-step process, the ALJ considers whether: 1) the claimant is gainfully employed; 2) the claimant has a severe mental or physical impairment; 3) the impairments, singly or combined, meet the criteria of the "listings"; 4) the impairment prevents the claimant from performing past relevant work; and 5) the impairment necessarily prevents the claimant from doing any other work. *Id.* If a claimant cannot meet the criteria at any step in the evaluation, the process ends and the determination is one of no disability. *Id.*

The ALJ determined that Turner has not had gainful employment. Additionally, the ALJ determined that the medical evidence established Turner suffers from a serious impairment, but that her impairments do not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. If a claimant has a severe physical or mental impairment that does not meet the listing, the Commissioner will then assess residual functional capacity (RFC). 20 C.F.R. § 404.1520a(d)(3). Residual functional capacity is defined as what the claimant "can still do despite his or her 'physical

or mental limitations.'" *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004); *quoting* 20 C.F.R. §§ 404.1545(a), 416.945(a). Residual functional capacity is an assessment based on all "relevant evidence," including observations by treating or examining physicians or psychologists, family, and friends; medical records; and the claimant's own description of his limitations. *See Pearsall v. Massanari,* 274 F.3d 1211, 1217-18 (8th Cir. 2001); and 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c).

**Weight to Treating Physician's Opinion**

An ALJ may resolve conflicts among various treating and examining physicians, assigning weight to the opinions as appropriate. *Id.* at 1219. The Court of Appeals for the Eighth Circuit has stated:

> Although the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000), we have also stated that a "claimant's residual functional capacity is a medical question," *Singh,* 222 F.3d at 451. "[S]ome medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

*Lauer v. Apfel*, 245 F.3d 700, 703-04 (8th Cir. 2001). "The [social security] regulations provide that a treating physician's opinion . . . will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2)). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered an opinion

10

inconsistent with other evidence as a whole. *Id.* at 1013; *Holmstrom,* 270 F.3d at 720. The ALJ reconciled the letter from Turner's treating physician, Dr. Gogela, which indicated that Turner had a closed head injury, with Dr. Pomerantz's conclusion that Turner had not suffered a three-week concussion in 1978. As indicated, the medical records from 1978 do not contain any reference to Turner being comatose during her hospitalization, but instead indicate that she was awake and a difficult patient. Based on the medical evaluations from 2005, Turner has mental impairments; however, not one treating physician or consulting physician has indicated that those mental impairments are more extensive than those found by the ALJ or that those impairments rise to the level to render Turner disabled.

**Credibility Determination.**

It is well-established that a hypothetical question need only include those impairments and limitations found credible by the ALJ. *See Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005)*, Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004). Whether the ALJ properly discounted Turner's credibility bears on the RFC determination made by the ALJ that was used in the hypothetical posed to the Vocational Expert. To assess a claimant's credibility, the ALJ must consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of subjective symptoms, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions. *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000)(citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ's decision explicitly outlined numerous

facts, which are supported in the record, that the ALJ considered in concluding that Turner was not entirely credible. (Tr. 20-21). The ALJ gave the testimony of Turner's treating physician due weight and the ALJ's determination of Turner's mental limitations is based on substantial evidence. Further, the ALJ correctly described Turner's mental limitations to the Vocational Expert as part of the hypothetical in this case.

**ALJ's Duty to Develop a Complete Record**

Turner asserts that the ALJ failed adequately to develop a complete record, because the record did not include Turner's 1992 Social Security claim file. However, there is no indication that the 1992 claim file contained any information that was material to the ALJ's determination in 2003.

> It is settled law in this circuit that social security hearings are nonadversarial, and the ALJ is responsible, independent of the claimant's burden, for fully and fairly developing the record. *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004). The duty to develop the record extends to cases like this one where the claimant is represented by counsel. *Id.* "The ALJ possesses no interest in denying benefits and must act neutrally in developing the record." *Id.*

*Baker v. Barnhart*, 457 F.3d 882, 895 (8th Cir. 2006). As part of the current claim for disability, the ALJ requested additional mental evaluations of Turner which provided a full assessment of Turner's mental state in 2003. Those medical exams indicated that Turner exhibited mild and moderate restrictions. Those conclusions are not in conflict with any other medical evidence, and were properly adopted by the ALJ in the hypothetical. I conclude that the ALJ discharged her duty to ensure that the facts were fully and fairly developed.

**CONCLUSION**

For the reasons discussed, the Court concludes that the Commissioner's decision is supported by substantial evidence on the record as a whole and should be affirmed.

IT IS ORDERED: The decision of the Commissioner is affirmed, the appeal is denied, and judgment in favor of the Defendant will be entered in a separate document.

DATED this 26th day of June, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge